IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KRISTEN LYNN PENISKA I,<br><br>            Plaintiff,<br><br>vs.<br><br>CJ FOODS INC.,<br><br>            Defendant. | 8:19-CV-277<br><br>**MEMORANDUM AND ORDER** |

       This matter is before the Court on defendant CJ Foods Inc.'s ("CJ Foods'") Motion for Summary Judgment. Filing 46. Pro se plaintiff Kristen Peniska was formerly employed by CJ Foods and asserts causes of action against the company for violations of state and federal law based on race- and sex-based discrimination, retaliation, constructive discharge, and failure to provide equal pay for equal work. Filing 10; Filing 13 at 4. Peniska's Filing 48 is also before the Court; it directs the Court's attention to certain documents in the record and points out "hand altering" of documents, asks that "CJ Foods documents from warehouse as of Nov 2019 thru May 2220[sic] be entered as exhibits as well as pay grades," and seeks subpoenas for witnesses to give testimony. To the extent Filing 48 is meant as a brief opposing CJ Foods' Motion for Summary Judgment, the Court will review all admissible evidence before it when considering CJ Foods' motion, as well as any contention raised by Peniska with regard to that evidence. To the extent Peniska is seeking to have the Court subpoena documents or witnesses on her behalf, the Court denies her motion.[1] For the reasons set forth below, CJ Foods' Motion for Summary Judgment, Filing 46, is granted.

---

[1] Peniska previously moved for the Court to subpoena documents. Filing 25. The Honorable Cheryl Zwart denied her motion, stating that because the Court does not represent either party, it would not subpoena documents on Plaintiff's behalf. Filing 28. Magistrate Judge Zwart then directed Peniska to the Court's public website for assistance in

# I. BACKGROUND

Peniska is a Native American woman. Filing 47 at 2. CJ Foods hired Peniska to work in one of its plants as a warehouse technician in Pawnee City, Nebraska, in 2013. Filing 10 at 2; Filing 47 at 2. She worked the 6:00 a.m. to 6:00 p.m. shift until 2016, when she applied for and was moved to the night shift. Filing 47 at 3. Peniska's duties included loading and unloading goods (dog food and raw materials used in making dog food), conducting inventory, and general shipping and receiving processes. Filing 47 at 3.

Peniska's attendance record was a matter of concern for CJ Foods. *See* Filing 47 at 4-6. In January 2016, CJ Foods warned Peniska regarding her poor attendance record from January 2015 to 2016. Filing 47-7. During that year, she accumulated eighteen "absenteeism points." Filing 47-7. CJ Foods' records indicate an employee accumulates two absenteeism points when absent or when leaving between sixteen minutes and two hours early and one point for lesser offenses. *See, e.g.*, Filing 47-7. Upon accumulating a certain number of points, an employee can be suspended without pay. *See, e.g.*, Filing 47-11. Points stay on an employee's record for one year. *See, e.g.*, Filing 47-7. In March 2017, Peniska received another verbal warning for having accumulated eight absentee points. Filing 47-8. The company provided a written warning in April 2017 when she reached ten points. Filing 47-9. She received a second written warning for her attendance in May 2017, having accumulated fourteen points. Filing 47-10. In July 2017, CJ Foods erroneously suspended Peniska for two shifts without pay after miscalculating her absentee-point total; CJ Foods later paid her for the time she was erroneously suspended. Filing 47 at 5; Filing 47-2 at 2.

---

obtaining subpoenas. Filing 28. This Court again informs Plaintiff that it does not subpoena records on a party's behalf. Further, Magistrate Judge Zwart set a deposition deadline of August 3, 2020 in this case. Filing 31. The final deadline for written discovery was July 17, 2020. Filing 39. Thus, Peniska's effort to obtain further evidence with her October 8, 2020, filing is also untimely. *See* Filing 48.

2

In December 2017, Peniska attained twenty absentee points, and CJ Foods suspended her without pay for two shifts. Filing 47-11.

CJ Foods also took issue with Peniska's job performance while she was in its employ. Filing 47. In May 2017, Peniska's supervisor, David Reynolds, rated her job performance a 2.6 on a five-point scale, indicating her performance was below the "meeting expectations" level. Filing 47-12. On Peniska's performance evaluation, Reynolds noted that she struggled with becoming angry when perceiving she was forced to carry more than her fair share of the workload, with being too easily overwhelmed, with focusing on tasks, and with attendance. Filing 47-12. Peniska alleges that another supervisor, Travis Kendall, yelled at her in December 2017 for a bag being open on a pallet only to later discover that another employee was responsible for it. *See* Filing 47-16; After Peniska placed incorrect lot codes on over 200 pallets on January 19 and 20, 2018, Kendall gave her a verbal warning. Filing 47 at 6; Filing 47-13. Kendall warned her that further performance issues would "result in additional disciplinary action up to and including termination." Filing 47-13. CJ Foods later discovered that Peniska had failed to properly ticket another shipment on January 21. Filing 47-14. Kendall drafted a written warning for Peniska regarding that incident. *See* Filing 47-14. Before Kendall could address the written warning with Peniska, she found it on his desk and confronted him about it. Filing 47-1 at 125-26. When Kendall confirmed Peniska had found another "write-up" for her performance, Peniska told him he would "get [her] resignation before [she] sign[ed] another write-up because [she had] asked for help." Filing 47-1 at 126. Peniska submitted her resignation on February 4, 2018; the written notice she drafted indicated her resignation was effective the same day. Filing 47-15. Peniska contends the resignation was a notice of her intent to cease employment at CJ Foods two weeks after it was submitted. Filing 47-1 at 128. When she returned to work her next scheduled shift after submitting the resignation, she was

3

told she was no longer in the computer system because she had already resigned. Filing 47-1 at 146; Filing 47 at 7.

Peniska attributes her performance issues to being forced to work a "two-person job" without help. *See, e.g.*, Filing 47-1 at 126 ("You know I need the help. You know I'm doing a two-person job."). During her deposition, Peniska acknowledged CJ Foods sometimes arranged for temporary workers to assist at her station in the warehouse, but claimed they were "always" pulled to help other stations. Filing 47-1 at 59. Peniska also stated the workers wanted to work with her because "it was an easy job for them to do," but they were not allowed to assist her. Filing 47-1 at 59. She also stated she repeatedly asked for help to no avail and thought she was being treated unfairly. *E.g.*, Filing 47-1 at 72 ("I kept asking for help in the warehouse."). When asked what she thought her supervisors' motives for treating her unfairly were, Peniska responded it might be because she kept asking for help. Filing 47-1 at 72; *see also* Filing 47 at 9 (responding later in her deposition that she might have been treated unfairly because she was new to the shift or the supervisors were new, and she had no other ideas or beliefs as to her supervisors' motives).

On March 13, 2018, after Peniska had resigned, she filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC"). Filing 47-16. In her charge, she alleged her working conditions and treatment constituted discrimination against her on the basis of her race and sex, and CJ Foods retaliated against her for voicing these complaints in her letter of resignation by terminating her. Filing 47-16. She also alleged her pay was unfair because "mostly White males" were being hired at the same pay rate she made after five years at the company. Filing 47-16. Peniska stated during her deposition that she discussed the matters in her NEOC complaint with the NEOC in January 2018 and had spoken with the NEOC about her working conditions before that, but she had not discussed the complaint with anyone at CJ Foods. Filing

4

47-1 at 145. Peniska also stated that she complained to human resources around Christmas 2017 that she felt she was being discriminated against because she was the only female in the warehouse and had been without a workstation partner the longest. Filing 47 at 9. The human resources employee who spoke to Peniska told her, "I'm trying to get you help. Just bear with me. We'll get you help soon." Filing 47 at 9 (quoting Peniska Deposition at 132).

Peniska filed the present action in June 2019. Filing 1. She brings claims under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and the Nebraska Equal Pay Act ("NEPA"), Neb. Rev. Stat. § 48-1221; claims for discrimination and retaliation on the basis of sex and race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. §§ 48-1101-1126; and a claim for constructive discharge under Title VII of the Civil Rights Act of 1964. Filing 10; Filing 13. CJ Foods moves for summary judgment on each claim. Filing 46. The Court will consider each claim in turn.

## II. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in

that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. Of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

**B. Equal Pay**

CJ Foods moves for summary judgment on Peniska's claims under the EPA and NEPA, asserting that she has not put forth evidence to show she was paid less than her male counterparts. Filing 47 at 19-20. A plaintiff asserting an employer has violated the EPA and the NEPA must first establish a prima facie case of wage discrimination to succeed. *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011); *see also Knapp v. Ruser*, 297 Neb. 639, 659, 901 N.W.2d 31, 46 (2017) ("[W]e hold that because [NEPA,] § 48-1221(1) is patterned after the federal EPA, 29 U.S.C. § 206(d), it is appropriate to look to federal court decisions construing 29 U.S.C. § 206(d) for guidance with respect to § 48-1221(1)."). "To establish a prima facie case of wage discrimination a woman must provide 'sufficient evidence' that her 'employer paid different salaries to men and women for equal work performed under similar conditions.'" *Price*, 664 F.3d at 1192 (quoting *Tenkku v. Normandy Bank*, 348 F.3d 737, 741 n.2 (8th Cir. 2003)).

Peniska offers no evidence demonstrating male warehouse technicians were paid more than she was. To the contrary, CJ Foods offers evidence in the form of a declaration from its Vice President of Human Resources, Tracy Seitz, indicating that Peniska's base hourly rate when she left the company was $12.24, while some male warehouse technicians' base rate was only $12.15 per hour. Filing 47-2 at 1. Because the evidence establishes that Peniska was paid more than some of her male coworkers in the same role, she cannot establish a prima facie case of wage discrimination. *See Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001) (finding no prima facie case of wage discrimination under Title VII of the Civil Rights Act of 1964 where a female tool room worker made more than at least some male tool room workers); *see also EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 669 (8th Cir.1992) ("Where, as here, the plaintiff raises a claim of unequal pay for equal work on the basis of sex, the standards are the same whether the

plaintiff proceeds under Title VII or the Equal Pay Act."). Accordingly, CJ Foods' Motion for Summary Judgment must be granted with respect the Peniska's claims under the EPA and NEPA.

### C. Discrimination on the Basis of Race and Sex

CJ Foods moves for summary judgment on Peniska's race- and sex-based discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and NFEPA, Neb. Rev. Stat. §§ 48-1101-1126, arguing she cannot establish a prima facie case of discrimination. Filing 47 at 11-15. In order to survive a motion for summary judgment on a discrimination claim under 42 U.S.C. §§ 2000e-2000e-17, a plaintiff must present direct evidence of discrimination or "create[] an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008); *see also Hartley v. Metro. Utils. Dist. of Omaha*, 294 Neb. 870, 891, 885 N.W.2d 675, 692 (2016) ("The NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. § 2000e et seq. (2012), and it is appropriate to look to federal court decisions construing similar and parent federal legislation."). Direct evidence shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). In contrast, an "inference of unlawful discrimination" is created by establishing a prima facie case of discrimination. *Jackson*, 548 F.3d at 1140. To establish a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse

8

employment action, and (4) similarly situated employees outside the protected class were treated differently." *Id.* (quoting *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005)).

Peniska offers no "specific link" between any alleged discriminatory animus towards her sex or race and the actions taken by CJ Foods with respect to her. *See St. Martin*, 680 F.3d at 1033. Thus, for her claim to survive summary judgment, she must demonstrate a prima facie case of discrimination. *See Jackson*, 548 F.3d at 1140. As a Native American and a woman, Peniska is a member of protected classes, but she fails to demonstrate the other three elements of a prima facie case of discrimination.

*1. Meeting Legitimate Job Expectations*

The evidence before the Court would not allow a reasonable juror to conclude that Peniska was meeting CJ Foods' legitimate job expectations. CJ Foods provided a performance review from May 2017 that indicates Peniska's performance fell below the "meets expectations" level and includes non-discriminatory reasons her performance was assessed as deficient. Filing 46-12. CJ Foods also provided extensive documentation of Peniska's unexcused absences from work leading up to her resignation. Filing 47-7; Filing 47-8; Filing 47-9; Filing 47-10; Filing 47-11.[2] The company also supports its position that Peniska was not meeting its legitimate expectations with documentation of warnings she received regarding her substandard performance in January 2018, shortly before she resigned. Filing 47-13; Filing 47-14. In contrast, Peniska has provided no evidence that her performance review was unfounded, that she was not chronically absent, or that she correctly tagged the pallets leading to her warnings in January 2018; she offers only allegations

---

[2] The Court notes that Peniska takes issue with "obvious computer ledger and then the HR hand altering [some of these] controlled documents." Filing 48. The Court has reviewed the "hand altering" on the absentee point forms and finds they are consistent with markings that would be made by someone checking the math behind the point totals by hand. The hand-written portions do not obscure or change the information contained in the documents, which Peniska authenticated during her deposition. *See, e.g.*, Filing 47-1 at 101 (Peniska authenticating an attendance warning she received). Therefore, the Court considers the documents.

that she lacked the proper staffing to complete her work, which even if substantiated, would not explain her performance review or chronic absences. *See* Filing 10; Filing 47-1 at 125 ("And they wouldn't get me help, but yet I'm getting wrote up for job performance.") Based on the evidence before the Court, no reasonable juror could conclude Peniska was meeting CJ Foods' legitimate job expectations.

*2. Adverse Employment Action*

Peniska also does not show CJ Foods took adverse employment action against her. An adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jones v. City of St. Louis*, 825 F.3d 476, 480 (8th Cir. 2016) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804-05 (8th Cir. 2013)). "[M]inor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not" constitute materially adverse employment actions. *Spears v. Mo. Dep't of Corr. and Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). Peniska argues that her being forced to work without assistance constituted an adverse employment action, but she offers no evidence indicating she suffered any loss of pay or benefits from her lack of help nor that it altered her future career prospects. *See* Filing 10 at 3 ("Plaintiff states she received tangible change in working conditions by having to do a 2 person job, being 1 person, in her job position."). The evidence before the Court is insufficient to support Peniska's allegation that her job was a "two-person job." Even assuming her position required the assistance of another person however, Peniska has not shown how depriving her of the help she alleges she requested did more than "merely inconvenience [her] or alter [her] work responsibilities." *See Spears*, 210 F.3d at 853.

Peniska indicated during her deposition that she had temporary help sometimes, but CJ Foods prioritized helping the other workstations over assisting with her work, which she stated was "an easy job for [the temporary workers] to do." Filing 47-1 at 59. Peniska alleges she was reprimanded for poor performance because of CJ Foods' alleged failure to provide help, but she does not show a material employment disadvantage stemming from her reprimands. *See* Filing 47-13 (verbal warning indicating further performance issues may result in disciplinary action up to and including termination); Filing 47-14 (second warning for similar issue indicating the same). Peniska makes no showing that these warnings materially altered her employment conditions, though they warned of potential future consequences for continued poor performance. *See* Filing 47-13; Filing 47-14; *see also Enowmbitang v. Seagate Tech., Inc.*, 148 F.3d 970, 973-74 (8th Cir. 1998) (holding a poor performance evaluation is not an adverse employment action where it was not shown to be used to plaintiff's detriment). Thus, the evidence does not demonstrate that Peniska suffered any adverse employment action.

*3. Treatment of Similarly Situated Employees Outside the Protected Class*

There is also no evidence before the Court to support Peniska's contention that she was treated differently than employees outside her protected classes of sex and race. CJ Foods offers evidence it treated Peniska the same as it treated white men and women. *See generally* Filing 47-2. Peniska was treated no worse than other employees when it came to her poor attendance; she was suspended for two shifts after accumulating twenty absentee points. Filing 47-11. CJ Foods similarly suspended two white men for accumulating fifteen and twenty-three points, respectively, and the company suspended a white woman for accumulating nineteen points. Filing 47-2 at 2. Peniska was also treated the same with regard to her job performance; she was given a verbal warning for placing incorrect lot codes on over 200 pallets and a written warning for failing to

11

ticket pallets during her next shift. Filing 47-13; Filing 47-14; Filing 47 at 7. CJ Foods gave a verbal warning to a white male employee for placing incorrect lot codes on nine pallets and warned another white male for overpacking pallets and ticketing incorrectly. Filing 47-2 at 2. One white female employee was warned for failing to verify a lot code and another was suspended for two days for writing the wrong lot code on a bag despite knowing it was wrong. Filing 47-2 at 2. Peniska also offers no evidence that similarly situated male employees or employees of another race were provided more help in performing their jobs than she was in performing hers. The evidence before the Court indicates that CJ Foods did not treat Peniska differently because of her sex or race. Therefore, Peniska cannot establish a prima facie case of discrimination.

### D. Retaliation

CJ Foods moves for summary judgment on Peniska's claim of retaliation under Title VII and NFEPA, arguing that she has not produced evidence sufficient to support a prima facie case of retaliation. Filing 47 at 15. "The elements of a retaliation claim under . . . Title VII are (1) protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997). As analyzed above in relation to her discrimination claims, Peniska has not put forth evidence that she suffered adverse employment action. Even if the Court accepted her allegations as evidence of some adverse employment action, Peniska would still fall short of demonstrating a prima facie case of retaliation because she does not put forth evidence indicating a causal nexus between her protected conduct and any allegedly adverse employment action.

In the Title VII context, "[c]onduct is only protected . . . if it qualifies as participation 'in any manner' in a Title VII 'investigation, proceeding, or hearing.'" *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999) (quoting 42 U.S.C. § 2000e–3(a)). Peniska did not file her NEOC

charge until March 2018, which was after she resigned from CJ Foods in early February. Filing 47-15; *see* Filing 47-15. Peniska's deposition also makes clear that she did not tell anyone at CJ Foods she was discussing the possibility of a complaint with the NEOC while she was employed with the company. Filing 47-1 at 145 (answering no when asked if she told anyone "at CJ Foods in January of 2018 that [she was] talking to the NEOC"). Because no one at CJ Foods was aware of Peniska's NEOC complaint before she resigned, the complaint cannot have caused any of CJ Foods' actions during Peniska's employment. However, Peniska also alleged she spoke with a representative from CJ Foods' human resources department regarding her feelings that she was being discriminated against on the basis of her sex around Christmas 2017. Filing 47 at 9. Assuming this conversation occurred as alleged, it could constitute protected activity. *See Brower*, 178 F.3d at 1005 (finding conduct only protected where part of a Title VII investigation, proceeding, or hearing); *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1245 (8th Cir. 1998) (finding protected conduct where employee made sexual harassment complaint with employer human resources). However, the only evidence of CJ Foods' arguably detrimental treatment of Peniska after mid-December 2017 is the warnings she received for improperly ticketing pallets.[3] *See* Filing 47-13; Filing 47-14. Aside from the Court having already determined these warnings were not adverse employment actions, Peniska provides no evidence indicating her supervisor, Kendall, who issued the warnings, had reason to know of her alleged complaint to human resources. Thus, she cannot show a causal connection between the warnings and her complaint. Because Peniska does not offer evidence sufficient to demonstrate a causal connection between

---

[3] Peniska argues in her NEOC complaint that she "was immediately terminated" when returning to work on February 7, 2018. Filing 47-16. She also stated in her deposition that her key car did not work when she returned to work after turning in notice of resignation, which she intended to be her two-week notice. Filing 47-1 at 128, 146. Because Peniska's notice of resignation clearly indicates it was effective on February 4, 2018, Filing 47-15, the Court finds she resigned, and therefore the end of her employment did not constitute an adverse employment action by CJ Foods.

her protected conduct and some subsequent adverse employment action by CJ Foods, she fails to make the required prima facie showing of retaliation needed for her claim to survive summary judgment.

### E. Constructive Discharge

CJ Foods argues it is entitled to summary judgment on Peniska's constructive-discharge claim because she fails to show her employment conditions were intolerable and CJ Foods had no intention of forcing her to resign. Filing 47 at 17-18. Under Title VII, "[t]o prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in her situation would find the working conditions intolerable, and (2) the employer intended to force her to quit." *Wilkie v. HHS*, 638 F.3d 944, 954 (8th Cir. 2011) (quoting *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (9th Cir. 2008)); *see also Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 284 (8th Cir. 1993) ("[T]he employer must necessarily be held to intend the reasonably foreseeable consequences of its actions."). CJ Foods is correct that the evidence before the Court does not support either element of Peniska's constructive-discharge claim.

"[A] plaintiff has a higher evidentiary burden when seeking to establish a constructive discharge than an adverse employment action." *Wilkie*, 638 F.3d at 954 (citing *Tran v. Trs. of State Colls.*, 355 F.3d 1263, 1270–71 (10th Cir. 2004)); *see also Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir. 2002) ("Constructive discharge requires considerably more proof than an unpleasant and unprofessional environment."). Because the Court finds the evidence before it insufficient to support Peniska's "ordinary" claims of discrimination, the Court necessarily finds that same evidence insufficient to raise a material question as to whether Peniska was constructively discharged. *See Penn. State Police v. Suders*, 542 U.S. 129, 147, 124 S. Ct. 2342, 2354, 159 L. Ed. 2d 204 (2004) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining

14

employee is expected to remain on the job while seeking redress." (alteration in original) (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997))). At worst, the evidence before the Court is that Peniska did not like her situation at work and felt she was treated unfairly, but her subjective feelings fall short of the required objective standard for proving a constructive discharge claim. *See Tatom v. Georgia-P. Corp.*, 228 F.3d 926, 932 (8th Cir. 2000) ("The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative."). Peniska also fails to show evidence supporting a conclusion that her resignation was a reasonably foreseeable outcome of CJ Foods' actions. The evidence demonstrates that many employees were disciplined in a fashion similar to her, for similar offenses, and there is no indication it resulted in a mass employee exodus. *See, e.g.*, Filing 47-2. Peniska has not provided the Court with sufficient evidence to show her working conditions were objectively intolerable or that CJ Foods intended them to be intolerable, so summary judgment is appropriate on her constructive-discharge claim.

### III. CONCLUSION

For the foregoing reasons, CJ Foods' Motion for Summary Judgment, Filing 46, is granted. Peniska's motion for subpoenas, Filing 48, is denied.

IT IS ORDERED:

1. Defendant's Motion for Summary Judgment (Filing 46) is granted;

2. Plaintiff's motion for subpoenas (Filing 48) is denied;

3. This case is terminated; and

4. A separate judgment will be entered.

Dated this 4th day of January, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

16